MICHAEL C. SULLIVAN (SBN 131817)
msullivan@paulplevin.com
EVAN A. PEÑA (SBN 268510)
epena@paulplevin.com
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

LAURENCE A. SHAPERO (*Admission Pro Hac Vice pending*)
lshapero@riddellwilliams.com
**RIDDELL WILLIAMS P.S.**
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154-1192
Telephone: (206) 389-1661
Facsimile: (206) 389-1708

Attorneys for Defendant VALVE CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| A.M., <br><br> Plaintiff, <br><br> v. <br><br> VALVE CORPORATION and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:16-cv-03595-PSG-FFM <br><br> **DECLARATION OF DINA NELSON IN SUPPORT OF DEFENDANT'S MOTION FOR TRANSFER PURSUANT TO 28 USC § 1404(a)** <br><br> Date:         August 1, 2016 <br> Time:         1:30 p.m. <br> Judge:        Philip S. Gutierrez <br> Courtroom:    880 <br> Trial Date:   Not Set |

I, Dina Nelson, declare as follows:

1. I am the Human Resources Manager for Defendant Valve Corporation and have worked for the company in this area since October 2007. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

/ / /

/ / /

---

1                                                              Case No 2:16-cv-03595-PSG-FFM .

DECLARATION OF DINA NELSON ISO MOTION FOR TRANSFER PURSUANT TO 28 USC § 1404(a)

2.   Valve Corporation is in the business of creating and distributing video games. Valve also operates the Steam digital entertainment service. Valve is incorporated in Washington, and its headquarters and operations are located in Bellevue, Washington.

3.   Plaintiff "A.M" or Antonella Maddalena, was hired as a Multilingual Support Representative in November 2008 to work at Valve's offices in Bellevue, Washington. Valve hired the Plaintiff and sponsored her application for an H1-B visa based on her academic qualifications—including a Ph.D in linguistics—and based on her skills as a linguist and translator who is fluent in English and other languages. In her work as an employee in Valve's Bellevue, Washington office, Antonella translated digital content primarily into Spanish and Italian, and also served as a liaison with members of the Steam gaming community in Spain, Italy and certain other countries. Antonella worked for Valve as a full-time employee in Washington office from November 2008 until February 2012.

4.   In 2011, I learned that Antonella was planning to undergo a gender change and wanted to move to Los Angeles because some of her doctors were there, and because she felt she would have a better support network there. At the time, Valve did not have any offices or employees in California, and was not interested in having employees there, but the company was willing to engage Plaintiff on an independent contractor basis to allow her to continue providing services to Valve if she chose to relocate to Los Angeles.

5.   Antonella's change to contractor status and her move to Los Angeles was solely the result of Plaintiff's request, and this request was made solely for her own personal reasons, as Valve had no desire for Antonella to perform her work away from its Bellevue, Washington offices. As we discussed Antonella's proposed move to Los Angeles, Antonella repeatedly expressed her appreciation for Valve's agreement to allow her to continue providing services to the company after her move to California. I provided Antonella with a copy of Valve's form independent

contractor agreement. I do not recall her requesting any edits or changes to the Agreement. She did inform me via e-mail that she was going to have her attorney and tax advisor review the draft Agreement. Ultimately, she signed the Independent Contractor Agreement on or about February 10, 2012. This was shortly before Plaintiff's last day of work as a Valve employee and her last day as a resident of Washington state.

6. Attached hereto as Exhibit A is a true and correct copy of the Independent Contractor Agreement entered into with Antonella, who originally had been hired in 2008 as a male employee named Antonello Maddalena.

7. After signing the Agreement and moving to Los Angeles, Antonella provided services to Valve under the independent contractor agreement for approximately four years, until Valve decided to terminate the Agreement on or about January 15, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of June, 2016, at Bellevue, Washington.

*[signature]*
Dina Nelson

# EXHIBIT A

INDEPENDENT CONTRACTOR AGREEMENT

THIS AGREEMENT ("Agreement") is effective February 26, 2012, by and between VALVE CORPORATION, a Washington corporation (hereinafter referred to as "Company"), and Antonello Maddalena, an individual and independent contractor currently residing at 8500 – 148th Avenue NE, #A2004, Redmond, WA 98052 (hereinafter referred to as "Contractor").

RECITALS

A.  Company is engaged in the business of creating computer games. Company has and does enjoy the goodwill of, and a reputation for fair dealing with, the public.

B.  Contractor is engaged in providing multilingual support services, and is currently located in Redmond, WA.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements herein contained, it is understood and agreed as follows:

AGREEMENT

1.  Services. Company is engaging the services of Contractor to provide multilingual support services (the "Services") for the Company. On an ongoing basis, the Company and Contractor shall agree in writing in advance on budget, timeline and specifications for the Services to be performed by Contractor and Contractor shall perform such work accordingly. The Company will only compensate Contractor for previously agreed-upon work within the approved budget.

2.  Restrictions on Subcontracting. Contractor shall not subcontract or otherwise permit third persons to perform the Services without Company's specific prior written consent.

3.  Compensation.

(a) In consideration of Contractor's satisfactory performance of all obligations under this Agreement, Company shall pay Contractor at a rate of forty dollars ($40.00) and no cents per hour, not to exceed a 55-hour work week unless previously approved. On the 15th and end of each month, Contractor shall submit an invoice to the Company detailing work performed and number of hours worked during the period.

(b) Contractor hereby acknowledges that (i) Company has no obligation to provide disability insurance, worker's compensation or other such insurance; (ii) Contractor should provide, at his expense, such insurance as Contractor may deem desirable and prudent; (iii) Contractor shall have no right to participate in Company's medical insurance or other employee benefit plans. Contractor understands that, as an independent contractor, Contractor should make payments against estimated income taxes due to the Internal Revenue Service and all relevant State agencies. In the event that Contractor's status as an independent contractor should be attacked or recharacterized, Contractor agrees to bear any and all expenses, including legal and other professional fees, increased taxes, penalties, and interest that Company and/or Contractor may incur in connection with any such attack or attempted recharacterization. Contractor hereby releases Company from any liability incurred or threatened, including interest

**EXHIBIT A**
**4**

and penalties, and the costs of defending administratively or judicially, and, if necessary, of settling any proceedings attempting to recharacterize Contractor's status or to collect any amounts, including interest and penalties, alleged to be due from Company. Contractor may deem it desirable to seek legal or other professional advice in order that Contractor may continue to be properly protected in Contractor's status as an independent contractor.

4. <u>Expenses</u>. Company shall reimburse Contractor at cost for Contractor's previously-authorized expenses which are itemized by Contractor on each invoice submitted to the Company and properly documented by Contractor.

5. <u>Confidentiality</u>.

(a) Contractor agrees that the Services are the sole and exclusive property of Company. Contractor expressly undertakes to retain in confidence all information and know-how: transmitted to Contractor by Company or by third persons and which Company has designated as proprietary and/or confidential, or which, by the nature of the circumstances surrounding the disclosure, should in good faith be treated as proprietary and/or confidential. Included within Company's proprietary and confidential information covered by this Agreement, without limitation, are the following: (i) any source code or other source materials (e.g. art, 3d models, etc.) delivered by Company to Contractor in furtherance of Contractor's duties hereunder, including source code or source materials owned by third parties; (ii) information not generally available or understood to be available to the public and which is used in the design or development of the Company's products and in the Company's business operations; (iii) customer and subscriber lists, and key employees of Company; (iv) agreements between Company and third parties; (v) the nature and description of development and business plans of the Company; (vi) sales records of any nature whatsoever; (vii) computer reports and data developed or acquired by Company; (viii) forms, policies, call books, and other forms of written and non-written (including intangible) data, experience, and information, whether of a technical, operational, or economic nature relating to aspects of the Company's business.

(b) Contractor understands and acknowledges that Company's confidential and proprietary information constitutes valuable and unique commercial assets of Company, and that disclosure of Company's confidential and proprietary information would have serious negative effects on Company's business and provide the recipient with a substantial and unfair competitive advantage. Contractor agrees that he will not, at any time during or after his performance of services hereunder, use for any other purpose than the furtherance of Company's business, or disclose to any person, firm, corporation, association or other entity, or to any combination thereof, directly or indirectly, for any reason or purpose whatsoever, any of said proprietary or confidential information, or any part thereof, without the express prior written consent of Company; provided, however, that this provision shall not apply to information which (i) Company has made public voluntarily; (ii) has been developed independently from a source not under an obligation of confidentiality; or (iii) has otherwise become part of the public domain without violation of any obligation of confidentiality or other obligation to Company or under law.

6. <u>Ownership</u>.

(a) To the extent any software code, art, models, levels, reports, memoranda, studies, plans, designs, specifications, drawings, materials, exhibits, and other documents and

2

**EXHIBIT A**

**5**

materials prepared by Contractor in the performance of Services under this Agreement include material subject to copyright protection, such documents and materials shall be deemed "work for hire" as such term is defined under U.S. copyright law. To the extent any such documents or materials do not qualify as a work for hire under applicable law, and to the extent they include material subject to copyright, patent, trade secret, or other proprietary rights protection, Contractor hereby irrevocably and exclusively assigns to Company, its successors, and assigns, all right, title, and interest in and to all such documents and materials. To the extent any of Contractor's rights in the same are not subject to assignment or transfer hereunder, including without limitation any moral rights, Contractor hereby irrevocably and unconditionally waives all enforcement of such rights. Contractor shall execute and deliver such instruments and take such other actions as may be required to carry out the assignments contemplated by this paragraph. Any documents, magnetically or optically encoded media, and other materials created by Contractor as part of the services it provides under this Agreement shall be owned by Company.

(b) At the request of Contractor, or at the latest upon termination of this Agreement, Contractor shall promptly deliver to Company all source code, source materials, records, documents, memoranda, drawings, schematics, prototypes, reports and other materials which are the property of the Company or which relate in any way to the Services, and all other property, trade secrets and confidential information of Company which are in Contractor's possession or control.

7. Representations and Covenants. Contractor represents, warrants, and covenants:

(a) that Contractor is free to enter into this Agreement, and that he has full legal power and authority to enter into this Agreement;

(b) that Contractor will use his best efforts and his own knowledge and skill in the performance of the Services;

(c) that the work performed pursuant to this Agreement will be originally created by Contractor;

(d) that the work performed pursuant to this Agreement will not infringe any copyright, trade secret, trademark, or other proprietary right held by any third party;

(e) that Contractor will provide, pay for, and keep in good standing all licenses pertaining to activities engaged in by Contractor and will comply with all federal, state and local laws and regulations and all valid orders of federal, state and local officials pertaining to such activities; and

(f) that Contractor will not entertain or engage in any act that could be of harm to the good reputation or image of the Company or Company Services.

8. Independent Contractors. Nothing in this Agreement shall be construed as creating a partnership, joint venture, franchise, agency, or employment relationship between the parties. Neither party shall have the authority to make any statements, representations or commitments of any kind or to take any action binding on the other except as provided for herein or authorized in writing by the party to be bound. Company shall not be liable for any personal

**EXHIBIT A**

**6**

or business expense of Contractor, except as agreed to in writing by the Company prior to Contractor's incurring such expense, and Contractor is explicitly prohibited from incurring any liabilities or expenses on behalf of Company except as expressly provided hereunder.

9. <u>Availability of Equitable Relief</u>.  Contractor acknowledges and agrees that noncompliance with the terms of this Agreement may cause irreparable injury to Company for which Company will have not an adequate remedy at law, and that Company shall therefore be entitled to apply to a court for extraordinary relief, including but not limited to temporary restraining orders, preliminary injunctions, permanent injunctions, or decrees of specific performance. Nothing contained in this Section shall prohibit Company from pursuing any other legal or equitable remedy available to it.

10. <u>Termination</u>. Either party may terminate this Agreement, with or without cause, by giving five (5) days written notice to the other party, and said notice shall be effective upon receipt. At termination, Contractor shall deliver all source code, source materials, documents, drawings, graphics and other materials created pursuant to this Agreement. In the event Contractor owes Company money at the time that the account is reconciled, Contractor shall have that money deducted by Company from fees then payable. After termination, each party shall advise the other of any change of its address.  Sections 3(b), 4 (to the extent of any outstanding, approved reimbursements), and 5-18 shall survive any termination or expiration of this Agreement.

11. <u>Severability</u>. The parties intend that the provisions of this Agreement be enforced to the fullest extent permitted by applicable law.  If any provision of this Agreement is determined to be unenforceable or void by a court of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect.

12. <u>Notices</u>. All notices and requests required or permitted to be given in connection with this Agreement shall be in writing and shall be deemed given as of the day they are received either by messenger, express delivery service, or in the United States of America mails, postage prepaid, certified or registered, return receipt requested, and addressed as follows:  if to Company, notices shall be given at 10900 NE 4th Street, Suite 500, Bellevue, WA 98004; and if to Contractor, at the address shown above, or to such other address as the party to receive the notice or request so designates by written notice to the other consistent with this Section.

13. <u>Headings</u>. The headings of this Agreement are for purposes of reference only and shall not limit or define the meaning of the provisions of this Agreement.

14. <u>Choice of Law and Venue; Attorneys' Fees</u>.  This Agreement shall be governed by the laws of the State of Washington without regard to its choice of law provisions. Contractor hereby consents to jurisdiction and venue in the state or federal courts sitting in King County, Washington, and waives any argument of forum non conveniens in connection therewith. In the event either party to this Agreement is required to, or does, maintain or defend any claim or cause of action against the other arising out of or relating to this Agreement, then the prevailing party in any such action or arbitration shall be entitled to recover from the other all reasonable attorneys' fees incurred therein, in addition to reasonable costs and expenses.

**EXHIBIT A**

**7**

15. <u>Assignment</u>. This Agreement shall not be assigned by Contractor. Except as otherwise provided, this Agreement shall be binding upon and inure to the benefit of the parties' successors and lawful assigns.

16. <u>No Waiver</u>. It is understood and agreed by the parties hereto that failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's rights, in any respect. No waiver or modification may be introduced as evidence in any proceeding, arbitration or litigation between the parties hereto arising out of or affecting this Agreement, or the rights or obligations of any party hereunder, unless such waiver or modification is in writing and duly executed by the parties.

17. <u>Entire Agreement</u>. This Agreement states the entire understanding between the parties and their successors in interest, to the extent permitted herein, with respect to the subject matter hereof, and merges and supersedes any promises or conditions in any other oral or written agreement. No provision of this Agreement may be amended or supplemented except by a written agreement signed by the parties hereto or their respective successors in interest.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date written below.

| COMPANY | CONTRACTOR |
|---|---|
| Signed: [signature] | Signed: [signature] |
| Scott Lynch, Chief Operating Officer | Antonello Maddalena |
| Date: 2/13/2012 | Date: February 10, 2012 |

5

**EXHIBIT A**
**8**