# Exhibit E

To Declaration of Barbara Rhoads-Weaver

Case 2:16-cv-01166-TSZ   Document 39-7   Filed 05/22/17   Page 1 of 17

THE HONORABLE JUDGE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| A.M.,<br><br>    Plaintiff,<br><br>    v.<br><br>VALVE CORPORATION,<br><br>    Defendant. | No. 2:16-cv-01166-TSZ<br><br>**PLAINTIFF A.M.'S FIRST INTERROGATORIES TO DEFENDANT VALVE CORPORATION**<br><br>**AND VALVE'S OBJECTIONS AND ANSWERS THERETO** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff A.M. requests that Defendant Valve Corporation ("Valve") serve written responses to the following interrogatories within thirty (30) days from the date of service.

**INTERROGATORIES**

**INTERROGATORY NO. 1**     Describe in detail each reason, and the basis for each reason, why Valve changed A.M.'s classification from an employee to an independent contractor in 2012, including, but not limited to, identification of all individuals who participated in the determination of each reason.

**ANSWER:** Valve transitioned Plaintiff's status from full-time employee to independent contractor status to accommodate her request to relocate to California for personal reasons. Plaintiff was offered an independent contractor agreement which she accepted. Dina Nelson,

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 1
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 1 of 16

1  Scott Lynch and Liam Lavery were the individuals at Valve who made the decision to offer
2  Plaintiff the Independent Contractor Agreement.  Each of them may be contacted c/o Riddell
3  Williams P.S.
4
5       **INTERROGATORY NO. 2**   Describe in detail each reason, and the basis for each
6  reason, why Valve terminated A.M.'s employment in 2016, including, but not limited to,
7  identification of all individuals who participated in the determination of each reason.
8       **ANSWER:** Valve did not terminate Plaintiff's "employment" in early 2016, it terminated
9  Plaintiff's Independent Contractor Agreement.  Valve ended this independent contractor
10 agreement because Valve determined it would be better to have translation, support and STS
11 services provided by an employee in its Bellevue, Washington offices who would work more
12 effectively and collaboratively with other Valve employees and with the Spanish STS
13 community.  Valve also determined that Plaintiff had shared her Steam administrator credentials
14 with at least one other person without authorization to do so.  Dina Nelson, Jenni Salmi and
15 Torsten Zabka participated in this decision, each of whom may be contacted c/o Riddell
16 Williams P.S.
17
18      **INTERROGATORY NO. 3**   For each job which A.M. held, whether classified as an
19 employee or contractor, while working for Valve from 2008 through 2016, provide the following
20 information: (a) the title and a description of the job; (b) the dates worked for the job; (c) the
21 salary or compensation for the job; (d) a description of the benefits provided for the job; (e) a
22 description of the duties of the job; (f) a description of the requirements for the job; (g) a
23 description of any accommodations provided to A.M. for the job; (h) a description of the
24 performance metrics and policies for the job; and (i) a description of each evaluation of A.M.
25 regarding the job.
26      **ANSWER:**

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 2
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 2 of 16

a) Plaintiff's job title as a full-time employee in Valve's Bellevue, Washington office was Multilingual Support Representative. When Plaintiff relocated to Los Angeles, she provided services as a Multilingual Support Services Contractor.

b) Plaintiff was employed by Valve as a Multilingual Support Representative from November 24, 2008 to February 24, 2012.

Plaintiff was engaged by Valve as a Multilingual Support Services Contractor from February 25, 2012 to January 15, 2016.

c) Plaintiff's annual rate of pay as a Multilingual Support Representative was:

From November 2008 to January 2010:  $55,000

From February 2010 to February 2011:  $58,000

From February 2011 to December 2011:  $64,000

From December 2011 to February 2012:  $74,000

Plaintiff's hourly rate for services under her Independent Contractor Agreement with Valve was:

From February 2012 to May 2015:  $40.00

From May 2015 to January 2016:  $45.00

d) As an employee in Valve's Bellevue, Washington office from 2008 through early 2012, Plaintiff was eligible for the following employee benefits:

- Medical, dental and vision plans.
- Life Insurance, Accidental Death and Dismemberment ("AD&D" and Long-Term Disability ("LTD") Plans. Plan details are in documents produced in response to Plaintiff's Requests for Production.
- Flexible Spending ("FSA") Account Plans.
- 401(k) Plan with Employer Matching Contribution.
- Time Off: Plaintiff accrued 23 days of PTO a year. This includes holidays.
- Parking: Option of parking in covered garage or receiving a monthly bus pass.

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 3
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 3 of 16

- Fringe Benefits/Programs: Fitness: $100/month towards gym or fitness program
- Laundry Services: Twice a week, local laundry service comes to pick up and drop off clean clothes.
- Massage Therapy: 15 minutes a week

Plan details are set forth in documents to be produced by Valve in response to Plaintiff's Requests for Production.

e) Job duties: See job descriptions to be produced in response to Plaintiff's Requests for Production.

f) Job requirements: See job requirements to be produced in response to Plaintiff's Requests for Production.

g) During her employment with Valve 2008-2012 Plaintiff from time to time requested that she work from home and/or work remotely from Los Angeles, and Valve accommodated these requests. Valve also accommodated Plaintiff's request to permanently relocate to Los Angeles for personal reasons and to enter into an independent contractor agreement.

h) Performance metrics: There were no standard performance metrics.

i) Evaluations: Because Valve does not employ individuals as supervisors, it does not conduct annual or other periodic "performance evaluations" as that term is used by most employers. However, until 2012, Valve did periodically solicit and obtain anonymous feedback from co-workers. In that process, feedback compiled in a spreadsheet, edited by Erik Johnson, distributed to key leaders, and discussed with individual employees, including the Plaintiff. For communications with Plaintiff concerning such feedback, and for additional information regarding Plaintiff's performance and/or contributions to Valve, see documents to be produced in response to Plaintiff's Requests for Production.

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 4
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 4 of 16

**INTERROGATORY NO. 4**   State whether A.M. received any oral and/or written warnings while working (whether classified as an employee or contractor) for Valve from 2008 through 2016, and if so, state for each such warning: (a) its date; (b) the person who administered the warning; (c) the complete substance of the warning; and (d) the disciplinary action, if any, that was taken.

**ANSWER:** Valve does not have formal employee review policies or practices, so there was never an occasion on which Valve issued a "warning" or "disciplinary action" to Plaintiff. However, several Valve employees—including Yahn Bernier, Laure Lacascade, Liam Lavery, Scott Lynch, Dina Nelson, Jenni Salmi, Doug Valente and Torsten Zabka—spoke with Plaintiff from time-to-time about her counterproductive actions and, in particular, her tendency to needlessly create or exacerbate workplace conflicts and/or to treat routine work-related disagreement as personal attacks on her.  Jenni Salmi and Laure Lacascade spoke with Plaintiff about her inappropriate responses to Steam support tickets during the period Plaintiff was an independent contractor.  Torsten Zabka communicated with Plaintiff about her unauthorized decision to share her Steam log-on credentials with a member of the STS community.  Each of these individuals may be contacted c/o Riddell Williams P.S.

**INTERROGATORY NO. 5**   Was A.M. ever censured or disciplined by Valve, in any fashion, for any alleged infraction of Valve's rules or regulations or for any alleged inadequacy of performance?  If so, describe all such instances of censure and/or discipline, stating the name, title and job description of all persons who censured and/or disciplined A.M. and the date(s) of such censure and/or discipline.

**ANSWER:** Valve reasserts its answer to Interrogatory No. 4.

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 5
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 5 of 16

**INTERROGATORY NO. 6**   Identify each person who made a recommendation as to whether A.M.'s employment with Valve should be terminated, including: (a) the date of each recommendation; (b) how the recommendation was communicated; and (c) the substance of each recommendation.

**ANSWER:** Valve objects to Interrogatory No. 6 as vague and ambiguous with respect to its temporal scope. Subject to and without waiving this objection, and based on the assumption that Interrogatory No. 6 is seeking information regarding Valve's decision to terminate its Independent Contractor Agreement with Plaintiff in January 2016, Valve responds as follows: Valve reasserts its answers to Interrogatory No. 2.

**INTERROGATORY NO. 7**   Regarding Valve's activities to fill the job functions performed by A.M., state: (a) the date Valve first began recruiting activities; (b) the date(s) when the job functions performed by A.M. were filled; and (c) the name, address and title of each person hired by Valve to fill the job functions performed by A.M. together with a description of (i) the job functions filled by each person, (ii) the compensation package provided to each person, (iii) the location where each person works, and (iv) the supervisor of each person.

**ANSWER:** Valve started efforts to recruit an employee for Spanish Localization, Support and STS communities almost immediately after terminating Plaintiff's Independent Contractor Agreement in early 2016. Valve used a translation service on an interim basis and hired an individual to fill that role in June 2016 as an employee in Valve's Bellevue, Washington offices. This individual does not have a "supervisor" at Valve, because Valve does not employ individuals in "supervisor" positions. This individual's annual wage compensation is $65,000. Valve will provide the name of the individual who filled Plaintiff's role upon entry of a stipulated protective order that prohibits Plaintiff from using or disclosing the identity of this individual other than for the purposes of this litigation.

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 6
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 6 of 16

**INTERROGATORY NO. 8**     If Valve was notified, in any manner and at any time, of any action(s) taken or remark(s) made by any person in connection with the workplace that were directed at A.M., A.M.'s gender, A.M.'s mental or physical abilities, or any other aspect of A.M.'s character or person, state the following for each action or remark: (a) the name and title of the person taking the action or making the remark; (b) the substance of the action or remark; (c) the date on which the action was taken or remark made; and (d) a description of Valve's response to the action or remark, including but not limited to all actions taken by Valve such as investigations or interviews.

**ANSWER:**  Valve is not aware of any disparaging remarks or actions in its workplace or by its employees that were directed to Plaintiff because of her gender, her gender transition, or her mental or physical abilities.

**INTERROGATORY NO. 9**     State Valve's estimated value, and the basis upon which Valve arrives at such value, of A.M.'s yearly compensation while classified as an employee, including among other things salary, paid time off, medical, dental, and vision insurance, contributions to retirement plan, life insurance, disability insurance and other benefits, at the time Valve changed A.M.'s classification from employee to contractor.

**ANSWER:**  Wage information is set forth in Valve's response to Interrogatory No. 3. With respect to the "value" of employee benefits, Valve does not "estimate" the "value" of its benefits.  Instead of providing any such estimate, Valve is providing the actual annual premium amounts paid by Valve on a per-employee basis in each of the calendar years in which Plaintiff was an employee in Valve's Bellevue, Washington office:

2009: $24,108

2010: $24,120

2011: $24,132

2012: $24,144

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 7
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 7 of 16

**INTERROGATORY NO. 10**   State Valve's estimated value, and the basis upon which Valve arrives at such value, of A.M.'s yearly compensation, including among other things salary, paid time off, medical, dental, and vision insurance, contributions to retirement plan, life insurance, disability insurance and other benefits, at the time of termination if A.M. had been classified as an employee.

**ANSWER:** Annual wage information cannot be estimated with certainty, because pay rates are determined each year based on individual contributions and other factors.  Moreover, it is not possible to determine with certainty that Plaintiff would have continued to be a Valve employee if she had decided to remain in Washington rather than relocate to Los Angeles in early 2012.

With respect to the "value" of employee benefits, Valve does not "estimate" the "value" of its benefits.  Instead of providing any such estimate, Valve is providing the actual annual premium amounts paid by Valve on a per-employee basis in each of the calendar years in which Plaintiff was an employee in Valve's Bellevue, Washington office

2013:  $24,156

2014:  $24,168

2015:  $24,180

2016:  $24,192

**INTERROGATORY NO. 11**   For each affirmative defense asserted by Valve: (a) summarize the facts upon which it is based; (b) identify all persons with knowledge relating to the defense; (c) and identify documents relating to the defense.

**ANSWER:**  Valve is not aware at this time of facts which support any of the affirmative defenses it asserted in this action.  Discovery is ongoing, and Valve will supplement this response in accordance with Fed. R. Civ. P. 26(e).

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 8
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

**INTERROGATORY NO. 12**   For the period of October 1, 2008 through the present, identify the person(s) responsible for enforcing and/or administering Valve's policies, and/or handling complaints for the division or department in which A.M. worked relating to: personnel, accommodations, harassment, discrimination, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended, (including but not limited to retaliation for protected activity), California Labor Code, California Business and Professions Code, California Government Code, and unpaid Steam Translation Server translators.

**ANSWER:**  Dina Nelson was most directly involved in human resources matters.  Ms. Nelson may be contacted c/o Riddell Williams P.S.

**INTERROGATORY NO. 13**   Identify each person who provided (a) information for Valve's responses to these Interrogatories and/or Valve's Answer, or (b) document(s) produced by Valve in response to Requests for Production; and for each person identified state for which interrogatory or paragraph of the Answer the person provide information or the identification (by bates stamp number or other description) of the document(s) provided for production by Valve.

**ANSWER:**

**Liam Lavery**.  Mr. Lavery can be contacted c/o Riddell Williams P.S.

Mr. Lavery provided information for Valve responses to Interrogatory Nos. 1, 4, 5, 8, 14, and 16.

**Scott Lynch**.  Mr. Lynch may be contacted c/o Riddell Williams P.S.

Mr. Lynch provided information for Valve's responses to Interrogatory Nos. 1, 4, 5, and 8.

**Dina Nelson**.  Ms. Nelson may be contacted c/o Riddell Williams P.S.

Ms. Nelson provided information for Valve's responses to Interrogatory Nos. 1, 2, 4, 5, 6, 8, 12, 16, and 17.

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 9
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 9 of 16


**Elizabeth Ratto**. Ms. Ratto may be contacted c/o Riddell Williams P.S.

Ms. Ratto provided information for Valve's responses to Interrogatory Nos. 3, 7, 9 and 10.

**Jenni Salmi**. Ms. Salmi may be contacted c/o Riddell Williams P.S.

Ms. Salmi provided information for Valve's responses to Interrogatory Nos. 2, 4, 5, 6, 8, and 16.

**Doug Valente.** Mr. Valente may be contacted c/o Riddell Williams P.S.

Mr. Valente provided information for Valve's responses to Interrogatory Nos. 4, 5, and 8.

**Torsten Zabka**. Mr. Zabka can be contacted c/o Riddell Williams P.S.

Mr. Zabka provided information for Valve's responses to Interrogatory Nos. 2, 4, 5, 6, 7, 8, and 15.

**INTERROGATORY NO. 14**   Describe all actions taken by Valve to retain documents and other evidence, including electronically stored information, that may be relevant to this lawsuit or the facts underlying it, and for each such action, identify the person(s) taking such action(s).

**ANSWER:** Shortly after Valve received a letter from Plaintiff's Los Angeles-based attorney, Valve distributed a document retention notice to all Valve employees likely to have information pertaining to Plaintiff were instructed to retain all documents relevant to Plaintiff's claims or Valve's defenses. Each such employee was instructed to retain all documents pertaining to the Plaintiff or her work at or for Valve.

**INTERROGATORY NO. 15**   Provide the names, addresses, positions held, dates on which the positions were held, and supervisors for all individuals who worked for Valve (whether classified as an employee or contractor and whether paid or unpaid) as a Steam

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 10
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1  Translation Server translator, moderator, or administrator during the ten (10) year period prior to
2  the date on which Valve informed A.M. it was terminating her employment in 2016.

3    **ANSWER:** Valve objects to Interrogatory No. 15 as overbroad, unduly burdensome,
4  seeks information that is not material to the resolution of any of Plaintiff's claims or Valve's
5  defenses, is not proportional to the needs of the case because the request spans an unnecessarily
6  broad time period, and is brought for an improper purpose.  Subject to and without waiving these
7  objections, Valve responds as follows:  Torsten Zabka is and has been primarily responsible for
8  managing Valve's relationships with members of its STS community during the relevant time
9  period.

11    **INTERROGATORY NO. 16**    With respect to each meeting, conversation, or
12  discussion, however informal, at which time the position, classification, compensation,
13  performance, or evaluation of A.M. was discussed by supervisors and/or officers and/or
14  managers of Valve, set forth: (a) the date of the meeting, conversation, or discussion; (b) the
15  name and address of each participant; and (c) a description in detail of what was said and by
16  whom.

17    **ANSWER:** Valve objects to Interrogatory No. 16 to the extent it seeks information
18  protected by the attorney-client privilege or the attorney work product doctrine.  Valve further
19  objects that Interrogatory No. 16 is overbroad and unduly burdensome because it is not limited in
20  temporal scope.  Subject to and without waiving these objections, Valve responds as follows:
21    January 18, 2011:  Plaintiff met with Doug Valente and Liam Lavery to discuss feedback
22  from Plaintiff's co-workers at Valve. Mr. Valente and Mr. Lavery presented Plaintiff with
23  sixteen positive peer feedback responses, which indicated that Plaintiff was a hard worker,
24  exceeded expectations on productivity, was responsive and smart.  They also presented Plaintiff
25  with eight negative peer feedback responses, which indicated that Plaintiff did not take advice or
26  criticism well, did not collaborate well, took things personally, created too much drama, and was

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 11
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 11 of 16

difficult for Valve employees to interact with.  Plaintiff discussed the feedback with Mr. Valente and Mr. Lavery, thanked them for the feedback and committed to working to improve on the negative points.

February 22, 2011:  Plaintiff met with Yahn Bernier to discuss Plaintiff's compensation. Mr. Bernier described that Plaintiff's compensation was a result of the stack ranking created following Valve's standard process. Mr. Bernier again explained to Plaintiff that her strength in language skills and hard work are offset in the compensation process by the too frequent negative impact she had on those working with her.

February 22 and 23, 2011:  Plaintiff exchanged e-mail correspondence with Liam Lavery regarding Plaintiff's compensation. Mr. Lavery reiterated the points made by Mr. Bernier and explained the reasons for Plaintiff's salary. Plaintiff responded by disputing each of Mr. Lavery's points in an effort to "rectify the [alleged] mistake" in her salary calculation.

February 28, 2011: Scott Lynch, Erik Johnson, Dina Nelson, and Liam Lavery met to discuss the possibility of terminating Plaintiff's employment. Mr. Lavery then e-mailed a summary of this meeting to Gabe Newell and sought his input on the potential termination.

March 10, 2011:  Plaintiff met with Scott Lynch and Liam Lavery to discuss Plaintiff's compensation and the compensation structure at Valve.  Plaintiff again expressed her desire to correct any problems she had been having, but she repeatedly denied having any problems working with others.

November 15, 2015:  Dina Nelson met with Dawn Dempsey, Jenni Salmi, Lauren Alexander, and Torsten Zabka to discuss concerns regarding Plaintiff's contributions as an Independent Contractor, and to determine whether to terminate Valve's Independent Contractor Agreement with her.  Concerns were expressed about Plaintiff's unapproved decision to allow a STS community member to use her Steam access credentials to perform work that Valve expected Plaintiff to perform.  Concerns were also expressed about Plaintiff's counterproductive communications and conduct with respect to Valve employees and members of the Spanish STS

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 12
4833-6516-6142.08
012317/1651/63478.00050

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 12 of 16

community.

January 14, 2016: Torsten Zabka met with Dina Nelson to further discuss Plaintiff's work as an independent contractor and the concerns he had about her work. Later on that same day, Ms. Nelson sent an e-mail message to Mr. Zabka and to Ms. Dempsey, Ms. Salmi, Ms. Alexander suggesting it makes sense to terminate Valve's Independent Contractor Agreement with Plaintiff.

Discovery is ongoing, and Valve is still engaged in the retrieval and production of e-mail exchanges and other documents which are likely to contain or refer to additional meetings or communications concerning Plaintiff. Valve will supplement this response in accordance with Fed. R. Civ. P. 26(e).

**INTERROGATORY NO. 17**   State whether Valve has performed any investigations or received any reports concerning the subject matter of A.M.'s Complaint (including but not limited to allegations or complaints regarding hostile work environment, supervisor mistreatment, discrimination, and unpaid translators), and if so, for each investigation or report state: (a) the date(s) of each investigation or receipt of each report; (b) the nature and scope of each investigation or report in precise detail; and (c) identification of all letters, memorandum, reports, and other communications and/or documents concerning the subject matter of each investigation or each report.

**ANSWER:** Valve objects to Interrogatory No. 17 to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Valve further objects to Interrogatory No. 17 as vague because the terms "investigations" and "reports" are not defined. Subject to and without waiving any of these objections, Valve responds as follows: Plaintiff did not complain to Valve about any purportedly unlawful hostile work environment, supervisor mistreatment, discrimination or purported mistreatment of STS volunteer translators. For this reason, Valve did not conduct any investigation concerning any such complaint.

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 13
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 13 of 16

| | |
|---|---|
| 1 | |
| 2 | **INTERROGATORY NO. 18**   Identify and describe with particularity all devices (including but not limited to computers, servers, cell phones, laptops, tablets, storage and all other electronic devices), software, platforms, or programs on which Valve communicated or created or stored any documents relating to A.M. work for Valve, or the allegations in A.M.'s Complaint, including but not limited to those related to unpaid Steam Translation Server translators and moderators. |

**ANSWER:** All responsive documents that in Valve's possession or control are contained on Valve's e-mail servers, network servers or on its Wiki website.  In addition, certain responsive documents are available to the public on the internet, for example, at **https://translation.steampowered.com/** and **http://steamcommunity.com/sharedfiles/filedetails/?id=171054487.**

Dated this December 13, 2016.

Respectfully Submitted,

FOCAL PLLC

By: *s/ Barbara Rhoads-Weaver*
Barbara Rhoads-Weaver, WSBA #34230
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: barb@focallaw.com

*Attorney for A.M.*

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 14
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Exhibit E - Page 14 of 16

**CERTIFICATION OF COUNSEL**

I, Kristina Markosova, as attorney for VALVE CORPORATION, hereby certify that I have read the foregoing responses to the above requests for admission and I believe they are in compliance with CR 26(g).

DATED this 23rd day of January, 2017 in Seattle, Washington.

_____
Laurence A. Shapero, WSBA #31301
Kristina Markosova, WSBA #47924
Attorneys for Defendant

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 15
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

# CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 23rd day of January, 2017, I caused a true and correct copy of the foregoing document to be served on the following attorneys, via the method indicated:

| | |
|---|---|
| Barbara Rhoads-Weaver<br>Focal PLLC<br>900 1st Avenue S., Suite 201<br>Seattle, Washington 98134<br>Phone: 206-529-4827<br>Fax: 206- 260-3966<br>Email: barb@focallaw.com<br>        misty@focallaw.com<br>        judy@focallaw.com | Via email (with permission) |

*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 23, 2017, in accordance with 28 USC 1746.

_Ashley M. Rogers_
Ashley Rogers

VALVE'S ANSWERS TO A.M.'S FIRST INTERROGATORIES (No. 16-01166) - 16
4833-6516-6142.08
012317/1651/63478.00050

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600