UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.M., <br><br> Plaintiff, <br><br> v. <br><br> VALVE CORPORATION, et al. <br><br> Defendants. | Case No. 2:16-cv-1166-TSZ <br><br> DECLARATION OF PLAINTIFF A.M. IN SUPPORT OF PLAINTFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

1. I am the Plaintiff in this matter, and I make the following statements based upon my own knowledge and records.

2. From November 2008 through January 2016, I worked as a translator and in customer support at Valve.

3. Early in my employment, I informed my then customer support supervisor, Doug Valente, as well as the former human resources manager Kathy Gehrig and Dina Nelson about my ███████████████████████, and other conditions that substantially limited major life activities such as my interactions with others and my social functioning. The feedback that I received was that others at Valve perceived my disabilities as personality flaws and me being negative, withdrawn, dramatic, and unwilling to collaborate. After receiving this feedback I did become more withdrawn, which means that I did not participate in extra-work activities or

DECLARATION OF A.M. – 1
(2:16-cv-1166-TSZ)

**focal**PLLC
900 1st Ave. S., Suite 201
Seattle, WA 98134
telephone (206) 529-4827
fax (206) 260-3966

socialize with co-workers. Being withdrawn does not mean that I was unable to work collaboratively with others or do my job. I worked collaboratively with other translators and customer support technicians to assist with quick-texts and other translation requests and to help out with game testing and tasks when asked.

4. I also worked collaboratively and as the leader of the Spanish STS team, which kept translations at 100% with the highest quality.

5. In 2011, I had discussions with Ms. Nelson the human resources manager at the time about telecommuting and working remotely during ███████████████████. In 2012, Valve allowed me to move to Los Angeles, California and work remotely doing the same job as a translator and in customer support.

6. I was not the only translator and customer support technician that worked remotely. I remember others such as Lena Hur, Jenny Stendhal, and Wiktor who also worked remotely.

7. Ms. Nelson periodically inquired about my gender transition process and status. By the end of 2015, ███████████████████.

8. As a trans-woman, I am personally aware of the derogatory words used to demean and dehumanize us. The pronoun "it" is not neutral, but rather extremely contemptuous and loaded with prejudices. The pronoun "it" is used to dehumanize transgender people. "Tranny" is another extremely derogatory word used to refer to trans-women. Just as the "n-word" is used to dehumanize, debase, and dishonor black Americans, the words "it" and "tranny" are used to dehumanize, debase, and dishonor trans-women.

9. The fact that senior executives at Valve would freely use the word "tranny," even jokingly, in email correspondence and without repercussion is indicative of the atmosphere and environment at Valve towards trans-women.

10. In 2011, I asked Dina Nelson and others at Valve to begin using female pronouns and a female first name to refer to me. On several occasions, I made specific requests to co-workers to use my female name and female pronouns when referring to me. Several co-workers refused to

DECLARATION OF A.M. – 2
(2:16-cv-1166-TSZ)

**focal**PLLC
900 1st Ave. S., Suite 201
Seattle, WA 98134
telephone (206) 529-4827
fax (206) 260-3966

change my name on the Valve internal messenger Lync. Having received the peer review feedback that I was considered to be dramatic in 2011, I did not want to complain and did not complain because I did not want to lose my job. When I would see my old male name still being used in the system long after I had made specific requests to use my female name, it was a frequent reminder of their contempt and hostility towards me as a trans-woman and the discriminatory atmosphere and culture.

11. My job was a pillar in my life, so I tried not to complain and to focus on excellent work. I did my best to respond to the 2011 feedback. In 2013, after having been working remotely for approximately one year, I specifically asked for feedback on my performance. Unlike 2011, I did not receive any negative feedback. The feedback that I received in 2013 was unanimously positive. This indicated two things to me: I had successfully responded to the negative feedback from 2011; and working remotely did not negatively impact my ability to do my job.

12. In May 2015, I received a 12.5 percent raise. Although the raise did not include peer review feedback, I understood the raise to be an indication that Valve was still pleased with my performance and that working remotely was still working well as an accommodation.

13. Between receiving the raise in May 2015 and being terminated in January 2016, I did not receive negative peer review feedback nor a request to improve or address performance issues. If Valve had given me any such feedback or requests and the opportunity, I would have done my best to respond and follow the feedback just as I had successfully done after receiving the 2011 feedback as indicated by my unanimously positive peer review feedback in 2013.

14. As early as 2009, before STS, I had raised the issue that unpaid translators were being exploited. I recommended paying the translators or outsourcing the translations to agencies. Eventually, as a compromise, I was allowed to gift the translators videogames as a token of appreciation for their work.

15. In the end of 2015 and beginning of 2016, I was still raising concerns about the treatment of the unpaid translators being exploited with promises of paid positions that they were not

DECLARATION OF A.M. – 3
(2:16-cv-1166-TSZ)

**focal**PLLC
900 1st Ave. S., Suite 201
Seattle, WA 98134
telephone (206) 529-4827
fax (206) 260-3966

receiving, and about the conflicts that were being caused by my supervisor Torsten Zabka, not only in the Spanish STS team but also as being reported to me by unpaid translators in the Italian and other communities.

16. The matter escalated and I sent an email to the human resource manager, Dina Nelson, on January 7, 2016 about the hostile environment and treatment of the unpaid translators by my supervisor Torsten Zabka and Valve because I believed it was unethical and unlawful.

17. My supervisor Torsten Zabka removed me from my STS Spanish administrator position, and when I asked why, he told me to talk to HR. I followed up with an email to Dina Nelson, the human resource manager.

18. The following day, I chatted with a co-worker, Laure Lacascade who was a translator and customer support technician but in French. I also sent her a copy of my email to human resources to get her feedback on whether I was being dramatic or out of line. She shared with me a similar experience she had with our STS supervisor.

19. Eight days after I sent the email to human resources about my supervisor, the hostile environment, and treatment of unpaid translators, I received an email from Ms. Nelson that Valve had terminated my employment because it wanted to move Spanish translation to Valve's office.

20. Because of the importance of my job to me, I emailed Ms. Nelson to see about moving back to Bellevue to keep my job figuring we could discuss other accommodations to make it work. But Ms. Nelson responded that Valve was not interested in having me work in its office.

21. Valve is now claiming that I was terminated because I allowed Juan José Villegas to access to my STS administrator credentials. I had been working collaboratively with Mr. Villegas by using TeamViewer to remotely access his desktop so that we could both seen translations on the same screen in real time as we each typed. I had not shared or allowed him to use my STS administrator credentials until after my supervisor wanted to know why I was logged in from Spain and he started assigning tasks to Mr. Villegas while I was off work that

DECLARATION OF A.M. – 4
(2:16-cv-1166-TSZ)

**focal**PLLC
900 1st Ave. S., Suite 201
Seattle, WA 98134
telephone (206) 529-4827
fax (206) 260-3966

could only be done with my credentials. To be clear, Mr. Villegas had access to my STS administrator credentials to do the tasks requested by my supervisor. Mr. Villegas never had access to my customer support credentials for Deskpro. At no time did my supervisor or anyone else at Valve tell me that I should stop allowing Mr. Villegas to use my STS administrator credentials to perform tasks requested by my supervisor.

22. Valve argues that my annual email expressing gratitude for my job discredits my claims. I appreciated my job for my survival and my gratitude was sincere. I also wanted to show that I was not the negative person they perceived me to be. The fact that I appreciated my job and wanted to keep it and show gratitude for it does not negate that I disagreed with the policies regarding unpaid translators and thought they were unethical and unlawful, that I did not like how trans individuals were viewed and that Valve did not have sensitivity trainings or anti-discrimination policies to improve the atmosphere and culture for trans individuals. Despite what the people at Valve with decisional power may think, I still enjoyed my job and wanted to succeed at it. These things are not contradictory or mutually exclusive.

23. I swear under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 14TH Day of August 2017 at Los Angeles, California.

_____
Antonella Maddalena

DECLARATION OF A.M. - 5
(2:16-cv-1166-TSZ)

focalPLLC
900 1st Ave. S., Suite 201
Seattle, WA 98134
telephone (206) 529-4827
fax (206) 260-3966