<u>A.M. v. Valve - Case No. Case No. 2:16-cv-1166-TSZ</u>

# EXHIBIT 9

# FILED UNDER SEAL

To Declaration of Barbara Rhoads-Weaver
In Support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment.

```
         IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

              IN AND FOR THE COUNTY OF KING

A.M.,                          )
                               )
        Plaintiff,             )
                               )  No. 2:16-CV-1166-TSZ
        vs.                    )
                               )
VALVE CORPORATION, et al.,     )
                               )
                               )
        Defendants.            )
_____

          30(b)6 DEPOSITION UPON ORAL EXAMINATION

                            OF

                      SCOTT W. LYNCH
_____




                      August 1, 2017
                    Seattle, Washington










            JENNIFER R. SUTHERLAND POTTER, CCR
                    LICENSE NO. 2772
                 CERTIFIED COURT REPORTER
              1415 Second Avenue, Suite 1107
                Seattle, Washington  98101
                     (206) 979-7306
```

**EXHIBIT 9**

1       what might be the right sort of path going forward.

2       So -- (witness gesturing.)

3 Q.  In the unwritten procedure that Valve typically follows

4       for making a termination decision, do any of those

5       steps involve an independent investigation?

6 A.  Independent --

7           MR. SHAPERO: Objection: Ambiguous.

8 A.  Yeah, I'm not sure what you mean by independent. You

9       mean like outside party, like get involved to do an

10      investigation or --

11 Q.  (By Ms. Roads-Weaver) Someone -- an investigation by

12      someone who is not biased by the claims being made

13      regarding the individual worker. So that could be

14      someone in-house, someone outside, but an

15      investigation by someone who's not biased relating to

16      the claims.

17 A.  Yeah, I would say typically when you sort of build that

18      group, you are going to be bringing in people from

19      outside of that group day to day that will participate

20      in the process of talking through an employee-related

21      issue. Yeah, it would almost always happen.

22        I can't think of any situations in which it didn't

23      happen, and I think typically somebody that felt like

24      they were too close to the situation would typically

25      remove themselves from the situation if they felt like

1  they were too close.
2  Q. So am I understanding correctly that, as part of
3     Valve's unwritten procedure for making termination
4     decisions, the group that's going to make the decision
5     or investigate the issue would be made up of
6     individuals who aren't biased regarding the claims
7     related to the employee being who's being discussed for
8     termination?
9            MR. SHAPERO: Objection: Ambiguous.
10 A. You know, end of the day, we want to make sure in every
11    one of these decisions that we are getting good data
12    and making the decision and making sure it's a good
13    decision, and if we felt like, you know, the people
14    that were involved in making the decision may be biased
15    in some way, then, you know, their input is going to be
16    pretty heavily discounted.
17 Q. (By Ms. Roads-Weaver) And who at Valve is making the
18    determination of whether to discount input from
19    someone on the group who may be biased?
20 A. I think everybody is going to pay attention to that.
21    If they think like a bad decision is being made
22    because -- and I don't -- what are you -- I don't know
23    what you mean by biased. If they are -- I think of it
24    like somebody is making a decision for reasons that,
25    you know, are not based on -- based on, you know, sort

```
 1       of facts or data.
 2             That's what I think of as like a biased decision,
 3       but I think everybody is kind of paying attention to
 4       those kind of things in decisions, especially around
 5       employee-related matters.
 6             MR. SHAPERO:  Why don't we take a break.
 7             MS. ROADS-WEAVER:  Sure.
 8                   (Recess.)
 9
10                   EXAMINATION (Continuing)
11       BY MS. RHOADS-WEAVER:
12   Q.  In the typical, unwritten procedure that Valve has for
13       making termination decisions that was in place in
14       January of 2016, did Valve have any procedure or policy
15       in place to avoid having someone involved in the
16       conflict -- that may be involved in the conflict at
17       issue being part of the decision-making team or group?
18             MR. SHAPERO:  Objection:  Ambiguous.
19   A.  I'm not sure I follow what you mean.
20   Q.  (By Ms. Roads-Weaver) Was there any policy or
21       procedure in place in January of 2016 related to the
22       procedure for making a termination decision to avoid
23       having someone involved in a particular conflict with
24       the worker at issue who the termination decision is
25       being made about excluded from making the decision?
```