# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| A.M.,<br><br>        Plaintiff,<br><br>    v.<br><br>VALVE CORPORATION, et al.<br><br>        Defendants. | Case No. 2:16-cv-1166-TSZ<br><br>PLAINTIFF'S TRIAL BRIEF |

## I.      INTRODUCTION

Plaintiff A.M. worked for Defendant Valve Corporation from 2008 until 2016 as a translator and customer support representative. Plaintiff is a transgender woman. Initially, Plaintiff worked in Defendant's office and presented as male, the gender she was assigned at birth. While working in Defendant's office, Plaintiff disclosed her gender dysphoria, depression and anxiety, and discussed how they impacted her interactions at work. In 2011, Plaintiff asked Defendant to allow her to work remotely while she transitioned due to her gender dysphoria. Plaintiff also asked that Defendant begin to use a female name and pronouns to refer to her. From 2012 until her termination in 2016, Plaintiff worked remotely while undergoing the gender transition process. In addition to colleagues continuing to use her old male name, one of Plaintiff's supervisors continued to misgender Plaintiff for years. Defendant periodically asked Plaintiff about the status of her gender transition. After Plaintiff's gender transition process was

substantially completed and just eight days after Plaintiff made a complaint to Defendant's human resource department, Defendant terminated Plaintiff's working relationship. Defendant informed Plaintiff that it wanted to bring the job she had been performing, but not Plaintiff, back into Defendant's office.

Plaintiff asserted eight causes of action. Four causes of action remain for trial. Plaintiff alleges Defendant wrongfully terminated her in violation of public policy (cause of action one) and discriminated against her (cause of action two) because of her transgender status or mental disabilities, including gender dysphoria. Additionally, Plaintiff contends Defendant violated wage and hour laws (cause of action six) and Cal. Bus. & Prof. Code Section 17200 *et seq.* (cause of action seven) by failing to pay her overtime and employee compensation benefits while she worked remotely.

## II.       FACTS

Plaintiff believes the evidence at trial will show the following:

### A.       Defendant was aware of Plaintiff's gender dysphoria, depression and anxiety.

Following an event at Burger King in 2009 in which Plaintiff was harassed by another customer and a Burger King manager, Plaintiff disclosed to her then supervisors and the human resource manager that she was receiving mental health treatment for depression and anxiety from Dr. Bakshi. In 2009, Plaintiff also disclosed to her then supervisors that she also suffered from gender dysphoria. Following another traumatic event on Capitol Hill in 2010, Plaintiff discussed her depression and anxiety with her then supervisors and with Defendant's former human resource manager. Plaintiff also discussed her mental disabilities and social issues with her then supervisors in relation to annual company trips and other social activities. In 2011, Plaintiff discussed her dysphoria, depression, anxiety and related social issues in a meeting with the then human resource manager in relation to concerns of other employees about their interactions with Plaintiff. In 2011, Plaintiff disclosed to Defendant's human resource manager that she was taking antidepressants and other medications but still having difficulty. In 2011, Plaintiff disclosed to Defendant her desire to undergo a gender transition due to her gender dysphoria.

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

**B.     Plaintiff began working remotely in 2012 and remained an employee in fact.**

In 2011, Plaintiff asked Defendant to allow her to work remotely from Los Angeles, California as an accommodation for her mental disabilities, including gender dysphoria. Defendant conditioned the accommodation on changing Plaintiff's status from employee to independent contractor. Plaintiff's translator and customer support representative job functions remained the same while working remotely. Plaintiff continued to perform those translation and customer support functions on a computer provided by Defendant, which Defendant replaced in 2014. Defendant's right to control how Plaintiff performed the translation and customer support functions continued while Plaintiff worked remotely. Plaintiff's supervisors continued to assign her tasks and control how Plaintiff performed translation and customer support functions. Although Plaintiff's work functions remained the same, Defendant willfully refused to pay Plaintiff overtime and other employee compensation benefits, including paid time off and health insurance.

**C.     Plaintiff competently performed her job functions while working remotely.**

During 2012, Plaintiff worked to address the negative feedback she received at the end of 2011. In the beginning of 2013, Plaintiff asked for feedback regarding her performance while working remotely and received unanimously positive feedback from Defendant. Plaintiff continued to perform translation and customer support functions for Defendant remotely in 2014 and 2015. In mid-2015, Defendant gave Plaintiff a 12.5 percent hourly raise.

As part of Plaintiff's translation functions, she was the administrator for a community of unpaid translators and moderators, who translated strings of text from English to Spanish for Defendant. While Plaintiff was the administrator for the Spanish language translation community, the community translated substantially all strings of text from English to Spanish with high quality translations. Most of the unpaid translators and moderators worked collaboratively together and with Plaintiff to achieve this result for years.

While Plaintiff could make recommendations, her supervisor controlled the level of access rights for individuals in the Spanish translation community. In 2015, the moderators of the

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Spanish translation community requested the removal of a member who they claimed was engaging in behavior disruptive to the community. After receiving a request from all moderators for the removal and investigating the request, Plaintiff recommended removal to her supervisor. Plaintiff's supervisor denied the request and conflict within the community resulted.

For more than a year before her termination, Plaintiff collaborated with one of the moderators using TeamViewer to log into the moderator's computer to share screens and view translations in real time. Plaintiff's supervisor knew of the collaboration. After Plaintiff's supervisor asked the moderator to perform tasks that could only be done with Plaintiff's credentials, Plaintiff shared her credentials with the moderator so that he could perform the tasks requested when she was unavailable. Plaintiff's supervisor assigned the moderator such tasks for a year, especially while Plaintiff was out for medical reasons.

Defendant's then human resource manager who made the decision to terminate Plaintiff is expected to testify consistent with her deposition testimony that, at the time of termination, there was no issue with the quality of Plaintiff's work. The issue was whether her peers wanted to continue working with her.

**D.  Defendant failed to pay Plaintiff all wages including overtime and employee compensation benefits while she worked remotely.**

Defendant provided health insurance and twenty-three days of paid time off to employees as part of their compensation. Defendant provided these elements of compensation to Plaintiff while she worked in Defendant's office. But Defendant willfully denied these elements of compensation to Plaintiff while she worked remotely. Each year that Defendant denied Plaintiff health insurance it retained for its own benefit more than $20,000. Each year that Defendant denied Plaintiff paid time off it retained for its own benefit more than $7,000.

While working remotely, Plaintiff worked more than eight hours in a day or forty hours in a week. Defendant was aware of Plaintiff working overtime. Yet Defendant did not pay Plaintiff overtime wages while she worked remotely. Approximately eighteen months after Defendant discharged Plaintiff, Defendant paid Plaintiff her overtime wages with interest. To

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

date Defendant has not paid the insurance benefits and paid time off that Plaintiff should have received while working remotely.

**E.    Defendant's stated reason for termination was a pretext.**

Defendant's stated reason for discharging Plaintiff was "outed" as a pretext because Defendant wanted to relocate the job, but not the employee. It is important to note that, despite Plaintiff's disabilities, she expressed a willingness to return to working in the office in order to save her job. Yet, Defendant responded that it was not interested in having Plaintiff move with the position she had been performing for years. Of course, Defendant has now abandoned its initially stated excuse for termination and now claims that Plaintiff was terminated due to performance issues. However, that newly manufactured claim, too, is pretextual for several reasons.

First, Defendant's human resource manager who made the decision to terminate testified the decision was not based upon the quality of Plaintiff's performance but rather whether the other people considering termination wanted to continue working with Plaintiff. Second, if performance was the real reason for termination, there would be no need to lie about relocating the job. Third, to the extent Defendant claims Plaintiff was terminated because she recommended termination of an unpaid translator, others who did the same thing were not terminated. Fourth, to the extent that Defendant claims Plaintiff was terminated because she shared her STS credentials with another translator, Plaintiff's supervisor encouraged it for approximately a year and never told Plaintiff she needed to stop, nor did anyone else at Defendant. Rather, Plaintiff's supervisor repeatedly asked the other translator to perform tasks using Plaintiff's STS credentials. Fifth, to the extent that Defendant claims Plaintiff was terminated because of performance or conflict in the Spanish translation community, the translators blame Plaintiff's supervisor for sowing discord, not Plaintiff. There was no impartial investigation before Plaintiff's termination to determine whether the conflict was caused by Plaintiff or her supervisor. Rather, Plaintiff's supervisor was part of the group formed to discuss termination of Plaintiff's employment. Regarding Plaintiff's performance as the Spanish STS administrator, it is

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

undisputed that with Plaintiff as the administrator, the Spanish STS team performed well keeping up with translations at 100 percent with high quality.

Sixth, in 2015, Defendant provided Plaintiff with no negative feedback or areas to improve performance; but rather gave Plaintiff a raise.Seventh, just three days before Defendant sent the termination email, another translator and customer support representative co-worker of Plaintiff told one of the people considering termination that he prefers for Plaintiff to do translations for customer support. Eighth, Defendant did not follow its own policy of forming a group to provide feedback and allow a co-worker the opportunity to improve like it had done with Plaintiff in 2011 leading to positive performance feedback to Plaintiff in the following years and a raise in 2015. Defendant has no non-discriminatory reason as to why it did not follow the policy with Plaintiff in 2015 after she had nearly finished her gender transition process. Nor does Defendant have any non-discriminatory reason for its refusal to have Plaintiff return to the office with the job she had been performing for years. Finally, Defendant paid Plaintiff for the rest of the month. There would be no reason for such payment if the termination was in fact due to performance issues.

**F.      Defendant's actions have harmed Plaintiff.**

Plaintiff has suffered economic harms. Immediately following the discharge, Plaintiff was without work. Within a few months, Plaintiff found a temporary contract position. But then she was without work again when the contract term ended. Plaintiff continued searching for a job and found a position working for Netmarble. The position at Netmarble did not allow for remote working, even on a part-time basis. Thus, while working for Netmarble Plaintiff continued searching for a position that would allow her to work remotely at least part-time. Plaintiff later accepted a position with I-Yuno Media Group Americas, Inc. that would allow her to work both in the office and remotely. Plaintiff recently changed positions within I-Yuno to a position that allows her to work all hours remotely. Plaintiff's past and future lost earnings damages are based upon the difference between what she would have earned but for Defendant's actions and what she has earned and is able to earn through her mitigation efforts finding other employment.

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Plaintiff's additional economic harms include expenses incurred for treatment with Dr. Greenspan.

Plaintiff has also suffered non-economic harms that include the emotional distress and mental suffering caused by Defendant's actions. Plaintiff's job with Defendant was a pillar in her life and being discharged caused significant emotional distress and mental suffering.

### III.      AUTHORITIES

### A.      Burden of Proof

A party bringing an employment discrimination and wrongful termination action must satisfy its burden by a preponderance of the evidence. *Alamo v. Practice Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 476 (2013) (citing *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (2013)). Similarly, a violation of California's Unfair Competition Law "is established by the usual preponderance of the evidence." *People v. First Fed. Credit Corp.*, 104 Cal. App. 4th 721, 732 (2002) (citing *People v. Superior Court (Kaufman),* 12 Cal. 3d 421, 431 n.9 (1974). Where a statute does not prescribe a standard of proof, like Section 203 of California's Labor Code, the default standard is the preponderance of the evidence. *Harris*, 56 Cal. 4th at 238 (citing Cal. Evid. Code Section 115). The preponderance of evidence standard simply requires that Plaintiff persuade the jury by the evidence that what she is required to prove is more likely to be true than not true. *In re Angelia P.*, 28 Cal. 3d 908, 918 (1981) (the standard simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence").

### B.      Wrongful Discharge in Violation of Public Policy

Plaintiff's wrongful discharge tort claims are based upon the public policies expressed in California's robust nondiscrimination laws. The Fair Employment and Housing Act ("FEHA") "policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for wrongful termination in violation of public policy." *Rope v. Auto-Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 660 (2013). Moreover, because nearly

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

70% of transgender workers have experienced discrimination or harassment at work,[1] transgender persons are included as a protected class in the nondiscrimination laws. Cal. Govt. Code Section 11139.8(a)(2); *see also* Cal. Fair Employment and Housing Council Initial Statement of Reasons (2016) at 2-3.

Circumstantial evidence is competent to prove the fact that the discharge was unlawful. *Medina v. Multaler*, 547 F. Supp. 2d 1099, 1130 (C.D. Cal. 2007) (citing *Flait v. N. Am. Watch Corp.,* 3 Cal. App. 4th 467, 479 (1992) (explaining that pretext may be inferred from circumstantial evidence like "the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination")). To prove her wrongful discharge claim, Plaintiff must prove the following: (a) that she worked for Defendant; (b) that she was discharged; (c) that Plaintiff's transgender status or disability was a substantial motivating reason for her discharge; and (d) that the discharge caused Plaintiff harm. *See Alamo*, 219 Cal. App. 4th at 479. A "substantial motivating reason" is one that actually contributed to the discharge and is more than a remote or trivial reason. *See Alamo*, 219 Cal. App. 4th at 479 n.2 (explaining that the Judicial Council of California derived this definition from *Harris*, 56 Cal. 4th 203). Plaintiff does not need to prove that discrimination based on her protected status was the sole motivation behind the discharge or that she would have been discharged solely on the basis of her protected status, without regard to alleged deficiencies. *See Clark v. Claremont Univ. Ctr.*, 6 Cal. App. 4th 639, 665 (1992); *Mixon v. Fair Emp't & Housing Com.*, 192 Cal. App. 3d 1306, 1319 (1987).

If the jury determines that Plaintiff has proven her employment status and that her transgender status or disability was a substantial motivating reason for her discharge, then Plaintiff is entitled to compensatory damages under normal tort principles. *See Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1101 (1992). Plaintiff may prove and ask the jury to determine the amount of Plaintiff's damages caused by the wrongful discharge, including the following: (a) past

---

[1]Hearing on AB 887 before California Assembly Committee on Judiciary (April 5, 2011) at pp. 4-5.

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

earnings in the amount that Plaintiff would have earned up to the verdict, including any benefits and pay increases; (b) future earnings in the amount of the present cash value of future wages and benefits that Plaintiff would have earned for the length of time the employment with Defendant was reasonably certain to continue; and (c) emotional distress and mental suffering damages for which the wrongful discharge was a substantial factor in causing. *Wise v. S. Pac. Co.*, 1 Cal. 3d 600, 607 (1970).

## C.    Discrimination in violation of FEHA

In addition to her wrongful discharge tort claims, Plaintiff asserts statutory claims under FEHA for discrimination based upon her transgender status or disability. *See* Cal. Govt. Code Section 12940(a). Plaintiff asserts a disparate treatment claim[2] alleging that Defendant treated her less favorably than others because of her transgender status or disability. Defendant has an affirmative and mandatory duty to take reasonable steps to prevent discriminatory conduct. Cal. Govt. Code Section 12940(k); Cal. Code of Reg. Section 11023. Plaintiff claims that Defendant breached its duty to prevent the discrimination in her termination because its human resource manager and Plaintiff's supervisor were not aware of Defendant's policy or procedure, if any, to prevent discrimination regarding transgender status and disability. If Plaintiff proves discrimination in the termination or refusal to allow Plaintiff to return to the office with the job, then whether Defendant complied with its affirmative duty to prevent the discrimination is a question of fact for the jury based upon an individualized assessment of the particular factors regarding Defendant and the facts of this case. *See* Cal. Govt. Code Section 12940(k); Cal. Code of Reg. Section 11023.; *see Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1314 (2015).

Plaintiff claims that Defendant's stated reason for termination and not allowing Plaintiff to return to the office with the job was a pretext for unlawful discrimination based upon her transgender status or disability. In light of the anticipated evidence at trial including the

---

[2]*Mixon*, 192 Cal. App. 3d at 1317 (disparate treatment claims are most easily understood as the employer simply treats some people less favorably than others because of their protected status).

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

misgendering of Plaintiff for years, a reasonable jury could conclude Defendant's stated reason for termination was a pretext for unlawful discrimination because Defendant moved Plaintiff's job, but not Plaintiff, back to its office shortly after she had substantially completed her gender transition. The jury could also reasonably infer discrimination as the substantial motivating factor for Defendant's refusal to consider Plaintiff for the job being moved back to its office that she had been performing for years.

1.      **A burden shifting approach is applicable to Plaintiff's discrimination claims.**

Because evidence of intentional discrimination is rare, the law permits the inference of discrimination based on facts that create "a reasonable likelihood of bias and are not satisfactorily explained." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000); accord *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 307 (2010). A burden shifting approach is used and proceeds as follows: Once the plaintiff establishes a prima facie case of discrimination, a presumption of discrimination arises. The burden then shifts to the employer to refute the presumption by producing admissible evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer carries its burden, the burden shifts back to the plaintiff, who then has the opportunity to contest the employer's proffered reason as pretext for discrimination, or to offer other evidence of discriminatory motive. *Guz*, 24 Cal. 4th at 355-56.

A plaintiff's prima facie burden is not onerous, requiring only that she demonstrate the defendant engaged in conduct from which one can infer it is more likely than not the conduct, if left unexplained, was based on a prohibited discriminatory motive. *Guz*, 24 Cal. 4th at 355. Distilled to its basic elements, a prima facie case of discrimination requires a plaintiff to show that (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, such as termination or denial of an available job, and (4) some other circumstance suggests discriminatory motive. *Id*. The anticipated evidence at trial will satisfy Plaintiff's prima facie burden and shift the burden to Defendant.

**focalPLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

> Once an employer presents a nondiscriminatory reason for the discharge: [t]he central issue is and should remain whether the evidence as a whole supports a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus. The employer's mere articulation of a legitimate reason for the action cannot answer this question; it can only dispel the presumption of improper motive that would otherwise entitle the employee to a judgment in his favor.

*Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 715 (2008). Simply put, if Defendant meets its burden,[3] the presumption of discrimination "drops out of the picture," and Plaintiff must show the employer's reasons are pretext for unlawful discrimination. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

To prevail on her discrimination claim, Plaintiff must prove: (a) the employment relationship; (b) that Defendant discharged or refused to hire Plaintiff; (c) that Plaintiff's transgender status or disability was a substantial motivating reason for Defendant's decision to discharge or refuse to hire Plaintiff; (d) that Plaintiff was harmed; and (e) that Defendant's conduct was a substantial factor in causing Plaintiff's harm. *See* Cal. Gov. Code Sections 12940(a); *Harris*, 56 Cal. 4th at 232.

Plaintiff must prove additional elements to establish discrimination based upon disability. The additional elements include: (a) that Defendant knew that Plaintiff had a history[4] of gender dysphoria, depression or anxiety that limited her interactions with others and social and occupational functioning; and (b) that Plaintiff was able to perform the essential job duties with reasonable accommodation for her disability. *See Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 924 (E.D. Cal. 2013). Plaintiff does not need to prove Defendant held any ill will or animosity toward Plaintiff because of her disability. *Wallace v. Cty. of Stanislaus*, 245 Cal. App. 4th 109, 115 (2016).

---

[3] If the employer fails to present evidence to rebut the presumption, then judgment should be entered in favor of the plaintiff. *Guz*, 24 Cal. 4th at 354.

[4] Under FEHA, the definition of mental disability includes "[h]aving a record or history of a mental or psychological disorder or condition described in paragraph (1) or (2), which is known to the employer or other entity covered by this part." Cal. Govt. Code Section 12926(j)(3).

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Plaintiff does not need to prove "but for" causation to establish her claim for discrimination under FEHA. *Harris*, 56 Cal. 4th at 230. Plaintiff must merely prove discrimination "because of" a protected characteristic. *Id*. at 232; Cal. Gov. Code Section 12940(a). What that means is that Plaintiff must show discrimination was a substantial motivating factor. *Id*.

> **2.    While Plaintiff's theory is one of pretext, Defendant's theory may be one of mixed-motive.**

A finding of that an employer harbored mixed motives in discharging a plaintiff does not preclude liability, but merely limits plaintiff's remedies. *Alamo*, 219 Cal. App. 4th at 477 ("where the plaintiff has proven that discrimination on the basis of a protected characteristic was a substantial motivating factor in the adverse employment action, a showing by the employer that it would have made the same decision in the absence of discrimination 'is not a complete defense to liability'") (citing *Harris*, 56 Cal. 4th at 225). However, because the burden is on the defendant to establish that it would make the same decision in the absence of discrimination, it is an affirmative defense that must be pled for an employer to assert. *Harris*, 56 Cal. 4th at 240. Defendant's answer contains no such affirmative defense to Plaintiff's second cause of action for discrimination. (*See* Dkt. No. 1-2 (Answer)).

**D.    Whether Plaintiff was an employee or independent contractor is a jury question.**

Whether Plaintiff was an employee is an element of her claims. While Defendant paid Plaintiff her requested overtime wages and accrued interest approximately eighteen months after termination on September 25, 2017, it failed to pay Plaintiff for benefits and continues to dispute that Plaintiff was an employee. Defendant appears to be under the mistaken belief that "wages" under Labor Code Section 203 includes only monetary payments for hours worked. Defendant is wrong.

"The word 'wage' has been given a broad, general definition so as to include compensation for services rendered without regard to the manner in which such compensation is

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

computed." *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal. App. 3d 35, 44 (1972). As the *Ware* court reported, the following have all been held to constitute "wages" within the meaning of the statute: (a) "[p]ayments to a health and welfare fund by an employer"; (b) "payment of insurance premiums by an employer"; (c) "payments to an unemployment insurance fund"; and (d) "pension plan benefits". *Id.* (citing cases).Accordingly, the court found the term wages "include[s] not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation." *Ware*, 24 Cal. App. 3d at 44.

Whether Plaintiff was an employee or an independent contractor is a triable issue of fact for the jury to decide based upon disputed evidence and inferences. *See S.G. Borello & Sons, Inc. v. Dept. of Ind. Rel.*, 48 Cal. 3d 341, 349 (1989) (*"Borello"*); *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 342 (2017).[5]

How the parties label the relationship is not determinative. *See. e.g., Borello*, 48 Cal. 3d at 349 (independent contractor agreement did not preclude finding of employee status); *Espejo*, 13 Cal. App. 5th at 342 (independent contractor agreement did not preclude finding of employee status). Whether the parties believed they were creating an employment relationship is only one of multiple secondary factors to be considered. *Id*. The principle test is whether the hirer retains a right to control the manner and means of the worker accomplishing the desired result. *Borello*, 48 Cal. 3d. at 350.

Moreover, the right to control, not whether or how that right is exercised, is the primary issue. *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014); accord *Industrial Ind. Exch. v. Ind. Acc. Com.*, 26 Cal. 2d 130, 135 (1945) ("The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship."); *S.A. Gerrard Co. v. Industrial Acc. Com.*, 17 Cal. 2d 411, 414 (1941) ("[T]he right to control, rather than the amount of control which was exercised, is the determinative factor."); *Hillen v. Industrial Acc. Com.*, 199

---

[5]Only if the evidence is undisputed does the question become one of law. *Borello*, 48 Cal. 3d at 349.

**focalPLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Cal. 577, 581–82 (1926) ("It is not a question of interference, or non-interference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act itself or the failure to act.").

What matters is whether the hirer "retains all *necessary* control" over its operations. *S.A. Gerrard Co.*, 17 Cal. 2d at 357. "[T]he fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it." *May v. Farrell*, 94 Cal. App. 703, 710 (1928). Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because "[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities." *Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951); *see also Ayala*, 59 Cal. 4th at 531; *Borello*, 48 Cal. 3d at 350; *Kowalski v. Shell Oil Co.*, 23 Cal. 3d 168, 177 (1979); *Isenberg v. Cal. Emp. Stab. Com.*, 30 Cal. 2d 34, 39 (1947). Thus, "[t]he real test has been said to be 'whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct.'" *Burlingham v. Gray*, 22 Cal. 2d 87, 99-100 (1943) (quoting *May*, 94 Cal. App. at 710). Put another way, "[w]hether a right of control exists may be measured by asking whether or not, if instructions were given, they would have to be obeyed on pain of at-will discharge for disobedience." *Ayala*, 59 Cal. 4th at 533 (internal quotations omitted).

While the right to discharge at will, without cause, is strong evidence in support of an employment relationship additional factors are considered as indicia of an employment relationship. *Borello*, 48 Cal. 3d at 350-51. The additional factors include: (a) Defendant supplied the equipment, tools, and place of work; (b) Plaintiff was paid by the hour rather than by the job; (c) Defendant was in business; (d) the work being done by Plaintiff was part of the regular business of Defendant; (e) Plaintiff was not engaged in a distinct occupation or business; (f) the kind of work performed by Plaintiff is usually done under the direction of a supervisor rather than by a specialist working without supervision; (g) the kind of work performed by Plaintiff does not require specialized or professional skill; and (h) the services performed by

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Plaintiff were to be performed over a long period of time. *See Ayala*, 59 Cal. 4th at 532; *Borello*, 48 Cal. 3d at 354-55. It is for the jury to weigh the disputed evidence and inferences, consider the factors, and decide whether Plaintiff was an employee or an independent contractor.

### 1. Whether Plaintiff is entitled to a civil penalty for Defendant's refusal to pay overtime for approximately eighteen months depends on factual determinations by the jury.

Approximately eighteen months after discharging Plaintiff, Defendant paid Plaintiff her overtime wages with interest. Under cause of action six, Plaintiff is entitled to more than unpaid overtime. She is also entitled to a civil penalty for Defendant's failure to timely pay her overtime wages. Cal. Labor Code Section 203. There is no question Plaintiff pled this violation and sought a penalty under Section 203. (Complaint ¶ 41 ("Based on the misconduct alleged in this Complaint, Plaintiff seeks to recover unpaid overtime compensation, *penalties*, interest, reasonable attorneys' fees, and costs in an amount to be determined at trial.") (emphasis added); ¶ 43 ("Plaintiff is informed and believes and based thereon alleges that Defendants are liable for statutory and civil waiting time penalties up to 30 days of payment pursuant to Labor Code Section 203 and other applicable laws and regulations.")).

The purpose of Section 203 is to compel prompt payment of earned wages. *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981). To be at fault under Section 203, the employer's refusal to pay does not need to be based on a deliberate purpose to defraud the worker of wages due; rather the term "willful," as used in Section 203, "merely means that the employer intentionally failed or refused to perform an act which was required to be done." *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 54 (2013). Whether an employer willfully refused to pay employee wages is an issue of fact reserved for the jury. *See Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1127 (S.D. Cal. 2006) (denying employer's motion for summary judgment because question of fact whether defendant's failure to pay was "willful"); *Blackwell v. Skywest Airlines, Inc.*, No. 06cv0307 DMS (AJB), 2008 U.S. Dist. LEXIS 97955, at *58 (S.D. Cal. Dec. 3, 2008) (same).

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

When violated, Section 203 mandates a penalty equivalent to the employee's daily wages for each day she remained unpaid up to a total of 30 days. *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998). Wages are generally due on the day an employee is discharged by the employer. *Smith v. Superior Court*, 39 Cal. 4th 77, 83 (2006) ("If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.") (citing Cal. Labor Code Section 201). A tender of the wages that were due, if properly made and in the proper amount, terminates the further accumulation of penalty but does not prevent the employee from recovering the penalty already accrued. *Oppenheimer v. Sunkist Growers, Inc.*, 153 Cal. App. 2d Supp. 897, 899 (1957).

Defendant tendered Plaintiff's overtime wages eighteen months after they were due, thereby incurring the maximum penalty of 30 days' wages. Defendant's tender of overtime wages did not terminate the further accumulation of penalty, nor does it preclude Plaintiff from recovering the 30-day penalty already accrued. The jury must make the factual determinations as to Plaintiff's daily wage rate and whether Defendant intentionally failed or refused to perform an act which was required to be done. *See, e.g.*, *Takacs*, 444 F. Supp. 2d at 1127 (where facts are disputed, jury must decide whether defendant's failure to pay was "willful"). The Court determines the civil penalty pursuant to Section 203 based upon the jury's factual determinations. *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 54.

Defendant did not plead a good faith affirmative defense to cause of action six. While good faith is a defense to a violation of Section 203, Cal. Code Regs. tit. 8, Section 13520, it must be affirmatively pled. *Chiu v. Citrix Sys., Inc.*, No. 8:11-cv-01121, 2011 U.S. Dist. LEXIS 151365 *12-13 (C.D. Cal. Nov. 23, 2011) (construing good faith as an affirmative defense to an alleged violation of Cal. Labor Code Section 203). Defendant's Answer contains no such defense. (*See* Dkt. No. 1-2 (Answer)).

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

## 2.    Violation of unfair competition law, Cal. Bus. & Prof. Code 17200 et seq.

By proscribing unlawful business practices, the unfair competition law ("UCL") "borrows violations of other laws and treats them as unlawful practices" that are made independently actionable under Cal. Bus. & Prof. Code Section 17200, et seq. *See State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App.4th 1093, 1103 (1996). California courts have recognized an employer violates the UCL and gains an unfair advantage over its competitors when it fails to pay employee wages. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 176 (Cal. 2000)(noting that an employee can assert a claim for misclassification under section 17200, and section 17203 authorizes broad remedies "prevent, deter, and compensate employees"); *Herr v. Nestle U.S.A., Inc.*, 109 Cal. App. 4th 779, 790 (2003); *see also Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 367 (2017) ("an employee's recovery of unlawfully withheld expenses under Section 2802 [expenditures or losses in discharge of duties or obedience to directions] is a proper restitutionary remedy under the UCL").

As noted above overtime is one aspect of Plaintiff's recovery. However, the term "wages" includes not only an employee's periodic monetary earnings but also other benefits to which the employee is entitled as part of compensation. *Id.* (citing *In re Work Uniform Cases*, 133 Cal. App. 4th 328, 337–338 (2005)). In this case, Defendant provides employee compensation that includes health insurance benefits and paid time off. Plaintiff's cause of action seven remains for trial. Evidence of the benefits Defendant provides to employees is relevant and admissible the issue of Plaintiff's damages for other claims and restitution for Defendant's violation of the UCL for failing to pay all earned wages. Just as the Court determines the Section 203 civil penalty based upon factual determinations by the jury, it can determine the restitutionary remedy for Defendant's UCL violation based upon the jury's factual determinations.

## E.    Plaintiff seeks the following damages and remedies:

While Plaintiff seeks damages from Defendant under more than one legal theory, she may only recover each item of damages once regardless of the number of theories alleged or

**focalPLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

proved. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 702 (2009). Additionally, Plaintiff seeks other remedies including civil penalties, restitution, and attorney fees and costs.

## 1. Lost Earnings (past and future)

Plaintiff seeks recovery of her lost earnings as follows:

- Past and future lost earnings, including benefits, less mitigation from the date of discharge under her wrongful discharge and discrimination causes of action.

- Past lost benefits willfully withheld from earned wages within the four year statute of limitations.[6]

## 2. Medical Expenses (past and future)

Plaintiff seeks recovery of her past and future medical expenses from the date of discharge under her wrongful discharge and discrimination causes of action. Plaintiff's medical expenses are limited to those from her treating mental health provider, Dr. Greenspan.

## 3. Mental Suffering and Emotional Distress (past and future)

Plaintiff seeks recovery of her past and future non-economic damages for mental suffering and emotional distress from the date of discharge under her wrongful discharge and discrimination causes of action.

## 4. Cal. Labor Code Section 203 Civil Penalty

Plaintiff seeks the maximum civil penalty allowed of thirty days of her daily wage at the time of discharge. Defendant tendered payment of overtime wages approximately eighteen months after Plaintiff's last day. It is undisputed that Defendant did not tender the wages during the first thirty days following Plaintiff's termination.

## 5. Restitution for withheld employee compensation benefits

Plaintiff seeks restitution under the UCL for the value of the employee benefits, insurance and paid time off, that Defendant withheld while Plaintiff worked remotely.

---

[6] *Jackson v. S.A.W. Entm't, Ltd.*, 629 F. Supp. 2d 1018, 1029 (N.D. Cal. May 21, 2009) ("Ms. Jackson's claim for unfair business practices has an even longer statute of limitations period -- *i.e.*, four years. *See* Cal. Bus. & Prof. Code Section 17208 (providing that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued").

**focalPLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

**6. Attorneys Fees and Costs**

It is within the Court's discretion to award attorney fees and costs if Plaintiff prevails on her claims for wrongful discharge in violation of FEHA public policies or discrimination in violation of FEHA. Cal. Gov. Code Section 12965(b). California courts look to federal decisions construing Title VII's attorney fee provision for guidance. *See, e.g.*, *Linsley v. Twentieth Century Fox Film Corp.*, 75 Cal. App.4th 762, 766-771 (1999). Under United State Supreme Court guidance, California courts recognize a <u>prevailing plaintiff</u> should ordinarily recover attorney fees unless special circumstances would render the award unjust, whereas a <u>prevailing defendant</u> may recover attorney fees only when the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith. *Chavez v. City of Los Angeles*, 47 Cal.4th 970, 985 (2010)(citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17 (1978)).

The Court also has discretion to award Plaintiff her attorney fees and costs if she proves discrimination was a substantial motivating factor. If (a) the Court allows Defendant to assert a an unpled mixed-motive affirmative defense to Plaintiff's second cause of action, (b) Plaintiff proves either her transgender status or disability was a substantial motivating factor in Defendant's termination or refusal to hire, and (c) Defendant proves it would have taken the same action absent the discriminatory motive, then Plaintiff is eligible for reasonable attorney fees and costs under Gov. Code Section 12965(b). *See Harris*, 56 Cal.4th at 235. In such cases where Defendant proves a same-decision showing, "an award of reasonable attorney's fees and costs to the plaintiff, unlike an award of damages, carries no risk that the plaintiff will be put in a better position than if she had not suffered any discrimination. Instead, it compensates the plaintiff and her counsel for bringing a meritorious claim of unlawful discrimination." *Id.*

Plaintiff is entitled to an award of attorney fees and costs for her unpaid overtime wages claim. Approximately eighteen months after Plaintiff's last day, Defendant paid Plaintiff her overtime wages and interest. Thus, Plaintiff is entitled to her reasonable attorneys fees and costs for cause of action six. Cal. Labor Code Section 1194 creates a one-way attorney fee and cost provision in actions seeking unpaid overtime. *See Earley v. Superior Court*, 79 Cal. App. 4th

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

1420, 1426 (2000). Moreover, Defendant's payment of overtime wages and interest is essentially a concession that Plaintiff prevailed on the claim and that the independent contractor agreement is void because if Defendant believed the independent contractor was valid there would be no reason for it to tender over fifty thousand dollars in overtime wages and interest. Plaintiff did not sue on the contract, but Defendants payment of the overtime wages and interest negates any claim that it may make for attorney fees under the contract. California law is clear that a litigant who successfully proves the invalidity of a contract is the prevailing party. *See, e.g., Scott Co. of Calif. v. Blount, Inc.,* 20 Cal.4th 1103, 1113 (1999) ("a litigant who prevails in an action on a contract by establishing the contract is nonexistent is entitled to attorney's fees whenever the opposing party would have been entitled to attorney fees under the contract had he or she prevailed.")

Additionally, it is within the Court's discretion to award attorney fees and costs under Cal. Code Civ. Proc. Section 1021.5 if Plaintiff prevails on cause of action seven for violations of Bus. & Prof. Code Section 17200 et seq. *See Espejo*, 13 Cal.App.5th at 378-379.

## IV.    CONCLUSION

In accordance with the above reasons and authority, Plaintiff respectfully asks this Court to approver her proposed Jury Instructions.


Dated this October 6, 2017.                    Respectfully Submitted,

                                               FOCAL PLLC
                                         By:   *s/ Barbara Rhoads-Weaver*
                                               Barbara Rhoads-Weaver, WSBA #34230
                                               Venkat Balasubramani, WSBA #28269
                                               Garrett Heilman, WSBA #48415
                                               900 1st Avenue S., Suite 201
                                               Seattle, Washington 98134
                                               Tel: (206) 529-4827
                                               Fax: (206) 260-3966
                                               Email: barb@focallaw.com
                                               Email: venkat@focallaw.com
                                               Email: garrett@focallaw.com

**focal**PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

*Attorney for A.M.*

**focal**PLLC

900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

## CERTIFICATE OF SERVICE

I, Barbara Rhoads-Weaver, hereby certify that on October 6, 2017, I caused a true and correct copy of PLAINTIFF'S TRIAL BRIEF to be served on all parties via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

> Laurence A. Shapero
> Sarah Joye
> Fox Rothschild LLP
> 1001 Fourth Avenue, Suite 4500
> Seattle, Washington 98154-1192
> lshapero@foxrothschild.com
> sjoye@foxrothschild.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: October 6, 2017

*s/ Barbara Rhoads-Weaver*
Barbara Rhoads-Weaver, WSBA #34230

**focalPLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966